UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MATTHEW ERIC BRYSON, | ) | Civil Action No.: 4:20-cv-00189-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income(SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned by voluntary consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

**I. RELEVANT BACKGROUND**

**A.     Procedural History**

Plaintiff filed an application for DIB and SSI on July 25, 2016, alleging inability to work since September 10, 2014. (Tr. 15). Plaintiff's claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on September 18, 2018, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on December 11, 2018, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 15-27). Plaintiff filed a request for review of the ALJ's decision, which

the Appeals Council denied on November 23, 2019. (Tr. 1). Plaintiff filed this action on January 21, 2020. (ECF No. 1).

## B. Plaintiff's Background and Medical History

### 1. Introductory Facts

Plaintiff was born on April 3, 1976 and was thirty-eight years old at the time of the alleged onset. (Tr. 25). Plaintiff has at least a high school education and has past relevant work experience as a tree cutter and deputy sheriff. (Tr. 25). Plaintiff alleges disability originally due to back problems, spondylolisthesis, lumbar herniated disc, ADHD, depression with anxiety, diabetes, hypothyroidism, hearing loss, and uncontrolled blood pressure. (Tr. 70-71).

### 2. The ALJ's Decision

In the decision of December 11, 2018, the ALJ made the following findings of fact and conclusions of law (Tr. 15-27):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since September 10, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar and cervical degenerative disc disease, diabetes with neuropathy, undifferentiated connective tissue disease, hearing loss, obesity, depression, anxiety and ADHD (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he requires the opportunity to alternate sitting and standing at-will with less than 10% time off task during change of position. He can never climb ladders/ropes/scaffolds, but can

    occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He can have frequent exposure to excessive noise, excessive vibration, pulmonary irritants, and workplace hazards. He is limited to simple, routine tasks performed two-hours at a time. He can have occasional interaction with the public, coworkers, and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 3, 1976 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defied in the Social Security Act, from September 10, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in evaluating Dr. Miller's treating opinions and in weighing the nonexamining opinions of Dr. Horn and Dr. Nabor. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

### A.     LEGAL FRAMEWORK

#### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary.

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971);

*Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.    ANALYSIS**

**Opinions**

Plaintiff argues the ALJ erred in evaluating Dr. Miller's treating opinions and in weighing the nonexamining opinions of Dr. Horn and Dr. Nabor.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by

the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A district court will not disturb an ALJ's determination as to the weight assigned to a medical opinion, including a treating physician's opinion, "absent some indication that the ALJ has dredged up 'specious inconsistencies' ... or has not given good reason for the weight afforded a particular opinion." *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Dr. Miller

There are several different statements in the record from Dr. Miller, Exhibits 8F, 14F, 9F, and 23F. In a treatment visit note from November 5, 2015, Dr. Miller stated: "Significant trouble with his neck, low back, documented severe DJD, low back disc disease, see Pain Clinic, encouraged to get the back, lower back, and neck worked up. He can't work, chronic pain depression, anxiety, pursue disability, call Social Security office." (Tr. 567).

In July 2016, Dr. Miller completed a physical capacities evaluation form. (Tr. 593). Dr. Miller opined in a work day, Plaintiff could sit 4 hours total, stand 1 hour total, and walk 30 minutes total, which does not accommodate an entire workday. (Tr. 593). Plaintiff could frequently lift up to 20 pounds and frequently carry up to 10 pounds. Plaintiff could repetitively use hands for grasping and push/pull but not for fine manipulation. (Tr. 593). Plaintiff's pain was consistent with his illness. (Tr. 594). Plaintiff's pain was severe enough to interfere with prolonged sitting/standing/walking. Plaintiff needed to change positions after a period of 15-30 minutes. Plaintiff could not bend/squat/reach more than a limited number of times during a workday. Plaintiff cannot repetitively operate foot controls such as those found in a car. Plaintiff cannot repeatedly use small tools or grasp objects. Plaintiff cannot repeatedly carry objects weighing greater than 30 pounds. Pain results in increased fatigue with prolonged activity. (Tr. 594).

In July 2016, Dr. Miller completed a different form circling "cannot" perform sedentary work or any higher exertional level. (Tr. 597). Plaintiff had moderate restrictions from exposure to moving machinery, marked changes in temperature and humidity, and driving automotive equipment. Plaintiff had mild restriction to exposure to dust, fumes, and gas. (Tr. 598).

A "to whom it may concern" letter dated December 13, 2016 from Dr. Miller stated:

> He carries diagnoses of severe cervical degenerative joint disease and lumbosacral degenerative joint disease. He has had previous lumbar neurosurgery. He has persistence of significant pain in the cervical and lumbar regions. He has a significant weakness in his upper extremities and lower extremities, and chronic pain. Matthew also suffers from hypertension and type 2 diabetes. I feel from a medical standpoint that Mr. Bryson is medically disabled from any gainful employment on a permanent basis.

(Tr. 634).

In July 2018, Dr. Miller completed a form opining Plaintiff was not a malingerer and was diagnosed with lumbar/cervical DJD and connective tissue disease. (Tr. 943). Plaintiff's pain/symptoms interfered with Plaintiff's attention/concentration constantly even for simple work tasks. Plaintiff could stand sit/stand/walk less than two hours in a work day. Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently . (Tr. 943). Plaintiff could never twist, bend, crouch, or climb. (Tr. 944). Plaintiff would be absent more than four days per month. Plaintiff's legs needed to be elevated two feet for 90% of the time due to venous pooling/leg pain/neuropathy. (Tr. 944).

The ALJ found Dr. Miller's opinions did not merit controlling weight:

> Statement of claimant's treating primary care provider, Dr. Miller on November 5, 2015 "he can't work, chronic pain, depression, anxiety, pursue disability, call Social Security office," is given limited weight as not only does Dr. Miller not provide any specific functional limitations, the issue of disability is reserved to the Commissioner (Ex 8F/45). Likewise, Dr. Miller's statement at Exhibit 14F/4 "I feel from a medical standpoint that claimant is medically disabled from any gainful employment on a permanent basis" is an issue reserved to the Commissioner.
>
> I have also given full consideration to the functional assessments of Dr. Miller at Exhibit 9F in which he concludes that claimant can sit 4-hours, stand 2-hours and walk 30-minutes and change position every 15-30 minutes and cannot perform fine manipulation and at Exhibit 23F that claimant experiences constant pain interference that interferes with his ability to sit or stand for less than two-hours, can perform no

9

> postural activities, will be absent more than 4-days a month and must elevate legs for 90% of workday due to venous pooling and neuropathic pain.
>
> I have not given th[ese] opinions controlling weight even though Dr. Miller is a primary care provider, because I do not find them to be adequately supported by the clinical findings of record or the other substantial and credible evidence of record.
>
> I have, further, given his opinions little weight for the following reasons:
> • His opinion is inconsistent with his physical examinations that show normal range of motion of his neck and low back with normal gait and 5/5 muscle strength in bilateral upper and lower extremities (Exs 21F, 8F, 11F)
> • The limitations he gave are unsupported and inconsistent with the physical examinations by the specialist from Piedmont Spine that note that other than tenderness in the lumbar region and a stiff gait, he otherwise exhibits normal range of motion of his back, sensation intact to bilateral upper and lower extremities, no atrophy and normal tandem gait (Ex 19F/3). MRI imaging of the cervical spine dated August 2016 is unremarkable and lumbar spine reveals a probable solid fusion (Ex 19F/1).
> • The degree of pain and limitations assessed is inconsistent with his treatment records that repeatedly reference "does not appear in pain" (Exs 21F/105 and 8F/69 and 58).
> • The restriction that he must elevate his legs 90% of the workday because of venous pooling is inconsistent with treatment records that are void of any findings of edema in lower extremities with normal sensation to touch, pinprick and vibration (Ex 19F/5).

(Tr. 24).

Before weighing Dr. Miller's opinions, the ALJ reviewed the record of both abnormal and normal objective findings. (Tr. 21-23). Reviewing the record itself, the exhibits do contain records of abnormal and normal objective exam findings as noted by the ALJ's considerations. (Tr. 384-85, 389, 391,392, 393, 396, 409, 413, 485, 489-90, 509, 517-18, 527, 534, 540, 545, 551, 557, 563, 570-71, 575, 580, 582, 586-87, 592, 621, 658, 666, 765, 777, 791, 799, 802, 803, 819, 828, 837, 849, 856, 865, 888, 896, 904, 911, 916, 920, 930,937, 939).[3]

---

[3] Some exhibit page citations by the ALJ are scrivener errors or part of a multi-page report.

The standard of review here is not whether conflicting evidence might have resulted in a contrary decision, but it is whether substantial evidence supports the ALJ's decision. Even with some evidence of abnormal findings, the ALJ provided more than a mere scintilla of record support for the weight given to Dr. Miller's opinions. The ALJ did not ignore abnormal findings. It cannot be said here that the ALJ has not given good reason for the weight afforded to these particular opinions. *See* 20 CFR § 404.1527(d). The ALJ's decision to give such opinions such weights was based on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The ALJ complied with SSR 96-2p(rescinded for applications after March 27, 2017)[4] in making clear to a subsequent reviewer the weight given and the reasons for that weight. Given the deferential standard of review, the court cannot say that the ALJ here did not provide citation to substantial evidence to support his findings on these opinions.

<u>Dr. Horn and Dr. Nabor</u>

Plaintiff argues the ALJ erred in affording great weight to the opinions of Dr. Horn and Dr. Nabor. The ALJ found: "As for the opinion evidence, I have given great weight to the State Agency findings that claimant can do a range of unskilled, light work; however, based upon updated medical and the claimant's testimony I have further restricted claimant to alternating sitting and standing (Ex 7A)." (Tr. 23). State agency medical consultants "are highly qualified ...who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program

---

[4] The changes to the former 20 C.F.R. § 404.1527, which SSR 96-2p provided guidance on, are not effective to applications prior to March 27, 2017.

physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled." 20 C.F.R. § 404.1527(e). The ALJ found more restrictions than the non-examining consultants based on updated medical records and Plaintiff's testimony. Based on a review of the ALJ's opinion as a whole, the ALJ provided substantial evidence to support the weight given to the state agency consultant opinions.

### III. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

|  |  |
|---|---|
| March 4, 2021<br>Florence, South Carolina | s/ Thomas E. Rogers, III<br>Thomas E. Rogers, III<br>United States Magistrate Judge |